485 So.2d 1336 (1986)
FLAGSHIP NATIONAL BANK, Appellant,
v.
GRAY DISTRIBUTION SYSTEMS, INC., G.D.S. Drugs, Inc., G.D.S., Inc., Gray Tobacco Company, Inc., Samuel Gray and Marilyn Gray, Appellees.
No. 84-2115.
District Court of Appeal of Florida, Third District.
March 25, 1986.
Rehearing Denied April 23, 1986.
*1338 Therrel, Baisden, Stanton, Wood & Setlin, Daniels & Hicks and Patrick J. Wilson and Sam Daniels, Miami, for appellant.
Greenfield & Duval and Leo Greenfield, North Miami, for appellees.
Before NESBITT, BASKIN and JORGENSON, JJ.

REVISED OPINION
BASKIN, Judge.
We review a final judgment entered against Flagship National Bank of Miami [Flagship] awarding Gray Distribution Systems, Inc.; GDS Drugs, Inc.; GDS, Inc.; Gray Tobacco Company, Inc.; and Samuel and Marilyn Gray [Gray] compensatory and punitive damages of $3.2 million and requiring Flagship to indemnify Samuel and Marilyn Gray for unpaid obligations to IRS and to some of Gray's suppliers. At the conclusion of a non-jury trial, the court ruled that Flagship breached its contract with Gray when the bank discontinued lending funds in excess of the amount of the promissory note. In addition, the trial court found that Flagship failed to dispose of Gray's collateral in a commercially reasonable manner and partially vacated a previously entered deficiency judgment. After considering the parties' contentions and examining the record before us, we reverse portions of the final judgment and remand for a new trial in accordance with this opinion.
A bank's attempt to protect its risk during the failure of a family business indebted to the bank is the subject of this litigation. On October 27, 1976, Gray borrowed $375,000 from Flagship. Gray pledged its accounts receivable as security for the loan. Samuel and Marilyn Gray, principals of various related companies, signed personal guarantees. During the latter part of 1977, the deterioration of Gray's business rendered Gray incapable of meeting its loan obligations. In May, 1978, after declaring the loan in default and demanding payment, Flagship restructured Gray's loan under a "workout" agreement. As part of the new agreement, Gray sold its Atlanta store and applied the proceeds of the sale to its debt. The Grays and their corporate entities executed a new note and security agreement which included additional collateral. The new note increased Gray's indebtedness to $400,000, payable on demand.
The note provided:
Principal and interest shall be payable on the dates and in the amounts specified below, to-wit:
.....
2) Principal payments shall be payable on demand of the Bank.
3) Notwithstanding anything to the contrary herein Bank may demand payment of all accrued and unpaid interest at any time.
The new loan agreement provided:
2. Terms of Loan: ... Principal payments shall be payable on demand of the Bank... . The outstanding principal balance and any accrued and unpaid interest due under the Promissory Note of even date and under the previous loan agreements between Bank and Borrowers, shall be due and payable immediately upon demand of the Bank.
.....
7. Covenants, Representations, Warranties. Borrower hereby represents, warrants and covenants that it will: ... Pay on demand the indebtedness of Borrowers to Bank immediately, without notice. .. .
As part of the "workout" agreement, Flagship took control of Gray's inventory and accounts. Gray provided Flagship with an estimated yearly budget from which Flagship determined whether to grant extensions of credit. The agreement required Gray to deposit incoming funds in an account under Flagship's control. Flagship applied these funds to Gray's outstanding loan balance. Gray could not disburse funds from its account without first obtaining Flagship's approval. From time *1339 to time, Flagship provided suppliers with letters of credit. As a result of the additional extensions of credit, Gray's indebtedness grew to approximately $600,000, well beyond the lending ceiling of $400,000. At first, the new procedure operated successfully, but when sales began to decline, the bank sought to avoid an increase in its risk. Flagship's loan committee imposed a requirement that Gray liquidate some of its assets and reduce its debt. The liquidation, coupled with restrictions on borrowing, prevented Gray from taking advantage of high volume discount purchasing and Gray's business rapidly declined.
On November 14, 1978, Flagship gave Gray written notice of default, demanded payment in full, and possession of the collateral. Flagship instituted a court action to liquidate Gray's collateral on November 17, 1978. On the advice of its attorney, Gray entered into a settlement agreement with Flagship as to possession of the collateral. At the time Gray entered into the settlement agreement, Gray was unaware that its lawyer had received a personal loan from Flagship.
The case proceeded on matters not encompassed in the settlement agreement, and the trial court entered a partial summary judgment granting Flagship a deficiency judgment of $234,198.52. Subsequently, the trial court granted Gray permission to file defensive pleadings. Gray's response included an answer, affirmative defenses, and counterclaims seeking damages for breach of contract (Count I), malicious interference with a business relationship (Count II), failure to sell collateral in a reasonably commercial manner (Count III), usury (Count IV), indemnification (Count V), and revocation of the settlement agreement (Count VI). The court proceeded first with the trial on the issue raised in Count VI, the claim in which Gray asserted that the settlement agreement had been induced by fraud predicated on Flagship's loan to Gray's attorney. When the judge deferred his decision in order to permit the jury to decide the issue, Flagship petitioned this court for a writ of mandamus directing the trial court to resolve the controversy. This court ordered the trial court to decide the matter. Flagship National Bank v. Testa, 429 So.2d 69 (Fla. 3d DCA 1983). On remand, the trial court entered a judgment against Flagship on Count VI. Flagship appealed. We affirmed on the basis that the settlement agreement was procured "in part through the breach of the fidelity owed to the [Grays] by their attorney, which fidelity was compromised by [Flagship]." Flagship National Bank v. Gray Distributions Systems, Inc., 445 So.2d 1080 (Fla. 3d DCA 1984).[*]
Trial proceeded on the remaining claims and culminated in the entry of a final judgment affirming the summary judgment in favor of Flagship, but vacating the amount of the deficiency award; finding in favor of Gray as to the claims for breach of contract, disposition of collateral in a commercially unreasonable manner, and indemnification for Gray's obligations to IRS, Allou Distributors, Inc., and Capital America, Inc.; and dismissing the remaining claims. The trial court awarded Gray $700,000 in compensatory damages and $2.5 million in punitive damages. The court also required Flagship to indemnify Samuel and Marilyn Gray in the sum of $259,865.48 for suppliers' debts and the IRS assessment. Flagship appealed.
Flagship's appeal rests on several grounds. First, Flagship attacks the trial court's holding that it breached the loan agreement and claims error in the award of compensatory and punitive damages predicated on that ground. In addition, Flagship challenges the trial court's finding that it must indemnify Gray for certain debts. We discuss these points in turn.
The first challenge is directed to the trial court's determination that Flagship breached its contractual obligations and failed to exercise good faith when it refused to continue *1340 extending Gray credit beyond the limits of its loan and sought repayment from Gray. The trial court found that Flagship's conduct during a four-month period in which Flagship extended credit beyond the loan limit constituted a course of dealings which modified the initial agreement and bound Flagship to continue extending credit above the amount of the loan. The trial court held that Flagship failed to act in good faith when it accelerated Gray's loan payments, thereby breaching its contract with Gray. We disagree.
A trial court's findings of fact are presumed correct. Marsh v. Marsh, 419 So.2d 629 (Fla. 1982); Strawgate v. Turner, 339 So.2d 1112 (Fla. 1976). "Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it. However, a misconception by the trial judge of a controlling principle of law can constitute grounds for reversal." Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979) (citations omitted). In our view, the trial court misconceived the applicable law.
Under some circumstances, a written agreement may be modified by a course of dealings, Linear Corp. v. Standard Hardware Co., 423 So.2d 966, 968 (Fla. 1st DCA 1982); Doral Country Club, Inc. v. Curcie Brothers, Inc., 174 So.2d 749 (Fla. 3d DCA), cert. denied, 180 So.2d 656 (Fla. 1965); however, when a course of dealings and the express terms of an agreement appear to conflict, the practice of the parties and the agreement must be construed, wherever reasonable, as consistent with each other. § 671.205(4), Fla. Stat. (1977). If no reasonable consistent construction can be drawn, the express terms of the agreement control. In the case before us, the note and loan agreement provided a lending limit of $400,000 on a loan payable upon demand. Under section 671.205(4), the express terms of the note and loan agreement override any inconsistent interpretation of the parties' agreement which might be inferred from their dealings.
The trial court's determination that the transaction is governed by the good faith provisions of sections 671.203 and 671.208, Florida Statutes (1977), is erroneous. The good faith obligation found in section 671.203 may not be imposed to override express terms in the contract. Fulton National Bank v. Willis Denney Ford, Inc., 154 Ga. App. 846, 849, 269 S.E.2d 916, 918 (1980) (citing 1 Anderson, Uniform Commercial Code 165, § 1-203:3 (2d ed. 1970)). Because the demand note contains an express contractual provision governing the due date of the loan, the note is not affected by section 671.203. Section 671.208 is also inapplicable. It has no effect on demand instruments, such as the one here involved, which permit the calling of loan obligations at any time with or without reason. § 671.208, Fla. Stat. Ann. (West 1977), Uniform Commercial Code Comment; Quest v. Barnett Bank of Pensacola, 397 So.2d 1020, 1021 (Fla. 1st DCA 1981).
Our determination that the trial court misconceived the law is supported by Florida case law. In Grandin Industries, Inc. v. Florida National Bank at Orlando, 267 So.2d 26 (Fla. 4th DCA 1972), the fourth district held that the bank did not breach its contract when it refused to lend additional funds. The court stated "[w]hether or not the bank loans money is solely a matter within the bank's prerogative. Hence the refusal of the bank to loan money was not a breach of contractual obligation." Grandin Industries, 267 So.2d at 30. Addressing a lender's obligation to complete funding a line of credit, the fourth district in Midlantic National Bank v. Commonwealth General, Ltd., 386 So.2d 31 (Fla. 4th DCA 1980), concluded that a lender had no legal obligation to fund a line of credit and, therefore, did not breach its agreement to extend credit when it failed to do so. Although the Flagship loan was not a line of credit, the same principle, that a lender has no obligation to continue lending absent some mandatory contractual agreement, applies.
*1341 Gray relies on K.M.C. Co. v. Irving Trust Co., 757 F.2d 752 (6th Cir.1985), to support its contention that Flagship was bound by the established course of dealings and obligations of good faith to continue lending in excess of the promissory note. Although K.M.C. bears some similarity to the case before us, it is distinguishable. K.M.C. involved a course of dealings covering a period of three years. The litigation arose when, unlike the facts of our case, the lender refused to advance funds without notice. The court ruled that the lender was under an obligation to act in good faith and to provide notice to the borrower so that the borrower could obtain alternate financing. The sixth circuit rejected the lender's argument that the demand note gave it the power to call the loan at any time. We refrain from following K.M.C. because we find that the court's citation of section 671.208, which is inapplicable to demand notes, renders its holding somewhat suspect.
In summary, we hold that Flagship's demand for payment was permissible under the express provisions of its loan agreement and that no breach of contract occurred. Flagship was under no obligation, either by statute or contract, to continue lending beyond the loan limit. We therefore reverse the trial court's determination that Flagship breached its contract.
Addressing the trial court's award of damages, we find that the trial court awarded damages on three counts without specifying the amounts attributed to breach of contract, to Flagship's failure to dispose of collateral in a commercially reasonable manner, and to Flagship's improper conduct in obtaining the settlement agreement. The trial court also failed to apportion the punitive damages between the counts addressing the breach of contract and the settlement agreement. Our holding that Flagship did not breach its contract vitiates any award of either compensatory or punitive damages on that ground. Under the trial court's prior judgment, however, Flagship remains liable on the settlement agreement count for compensatory and punitive damages. This court affirmed that judgment in Flagship National Bank v. Gray Distribution Systems, Inc., 445 So.2d 1080 (Fla. 3d DCA 1984). See Airvac, Inc. v. Ranger Insurance Co., 330 So.2d 467 (Fla. 1976); Barry Hinnant, Inc. v. Spottswood, 481 So.2d 80 (Fla. 1st DCA 1986); Brubaker v. Brubaker, 456 So.2d 1253 (Fla. 3d DCA 1984). Because we are unable to determine what portion of the damage awards is attributable to the count pertaining to the settlement agreement, we remand for a new trial on this issue. See Adler v. Seligman of Florida, Inc., 438 So.2d 1063 (Fla. 4th DCA 1983).
Next, we consider the trial court's disposition of Flagship's claim for deficiency judgment. The trial court erred in ruling that Flagship lost its entitlement to a deficiency judgment when it disposed of the collateral in a commercially unreasonable manner. This court established the rule that a secured party, such as Flagship, may still be entitled to a deficiency judgment even though the collateral was disposed of in a commercially unreasonable manner. Ayares-Eisenberg Perrine Datsun, Inc. v. Sun Bank, 455 So.2d 525 (Fla. 3d DCA 1984); Bank of Oklahoma v. Little Judy Industries, Inc., 387 So.2d 1002, 1005 (Fla. 3d DCA 1980). Flagship has the burden of proving that the fair market value of the collateral at the time of repossession was less than the debt. Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla. 1986). "If the secured party meets this burden, [it] will be allowed to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined." Weiner, 482 So.2d at 1365; Ayares-Eisenberg; Little Judy. Although the trial court found that the collateral was disposed of in a commercially unreasonable manner, it made no findings pertinent to the measure of damages as required by Little Judy. We therefore remand for a new trial as to damages on that ground.
The remaining issue pertains to the trial court's ruling requiring Flagship to indemnify Gray for certain of its debts. The *1342 court ordered Flagship to indemnify Samuel and Marilyn Gray, individually, for a penalty imposed on Gray by IRS for non-payment of withholding taxes, although the IRS notification indicated a penalty assessed against Samuel Gray as a responsible officer of Gray. The trial court cited as a ground for its ruling the fact that Flagship controlled Gray's funds.
Flagship contends that until Gray actually pays its outstanding obligations, any judgment ordering indemnification is premature. We disagree. In Jerome Nagelbush, Inc. v. Frank J. Rooney, Inc., 342 So.2d 121 (Fla. 3d DCA 1977), this court referred to entry of judgment, not payment, as a prerequisite for indemnification. We are unable to determine from the record before us whether an indemnification award against Flagship for Gray's IRS penalty obligation is premature. It is therefore necessary for the trial court to re-evaluate the claim with Nagelbush in mind. However, the court may not rely on 26 U.S.C. § 3505; IRS actions against Flagship, if appropriate, belong in another forum. On remand, the court should determine in which tax quarters Flagship had full control of Gray's funds and assess liability based on indemnification accordingly.
Next, the trial court ordered Flagship to indemnify Gray for obligations to Allou Distributors, Inc., a wholesale distributor. Because there is no evidence of a judgment in favor of Allou against Gray in the record, we reverse the trial court's ruling on the ground that the claim is premature. Nagelbush.
Finally, the trial court required Flagship to indemnify Gray for a judgment recovered by Capital America, Inc. against Gray. The court based its ruling on the ground that Flagship was obligated to pay liens against Gray's stores from the proceeds it received when the stores were sold. The court's ruling cannot stand because the record is devoid of any finding as to whether Capital America's security interest was subordinate or prior to Flagship's interest. § 679.504(1)(b), (1)(c), Fla. Stat. (1977). On remand, the trial court may resolve this issue.
For these reasons, we hold as a matter of law that no breach of contract occurred, and that accordingly, Gray is not entitled to recover either compensatory or punitive damages predicated on that ground. We remand for a new trial to enable the court: to determine the amount of deficiency, if any, to which Flagship is entitled in light of disposition of the collateral in a commercially unreasonable manner; to determine the amount of compensatory and punitive damages to which Gray is entitled for Flagship's improper procurement of the settlement agreement; and to decide the indemnification issues. In all other respects the judgment is affirmed.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[*] The parties also appeared before this court in Flagship National Bank of Miami v. Gray Distribution Systems, Inc., 432 So.2d 660 (Fla. 3d DCA 1983), where we reversed the trial court's injunction restraining Flagship from prosecuting an in personam action against Gray in another jurisdiction.