616 So.2d 795 (1993)
BESPRESS, INC., Plaintiff-Appellant,
v.
CAPITAL BANK OF DELHI, Defendant-Appellee.
No. 24640-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*796 Walker, Tooke, Perlman & Lyons by Jerald L. Perlman, Shreveport, for plaintiff-appellant.
McGlinchey Stafford Lang by B. Franklin Martin, III, James C. Crigler, Jr. and Stephen W. Rider, New Orleans, for defendant-appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
HIGHTOWER, Judge.
In this suit for damages allegedly caused by a bank's asserted improper actions in a lender-borrower relationship, plaintiff appeals a judgment sustaining an exception of no cause of action. For the reasons hereinafter expressed, we reverse and remand.

BACKGROUND
It is alleged that Bespress, Inc., a corporation formed to produce a newly designed cotton gin press, entered into a financial relationship with Capital Bank of Delhi ("CBD") in the spring of 1983. The petition, supplemented on three separate occasions in response to an exception of vagueness, generally states that the bank's president, Ronnie Myrick, along with one of the directors and another officer, induced the business to relocate its manufacturing plant from Forest, Louisiana to the Delhi Industrial Park. In addition to promising low interest financing and certain tax incentives from local, state, and federal agencies, CBD agreed to provide $150,000 of interim financing for immovable property, with repayment due upon designated federal funds becoming available.
The petition further states that, through these arrangements, the company became wholly dependent upon CBD for operating capital. Plaintiff avers that, secured merely by individual cotton press purchase orders, the bank also provided short-term loans for the general manufacturing activity of the enterprise. Upon payment by the customer following delivery of each item sold, Bespress would reimburse the amount loaned for the transaction. According to the allegations, of some 53 notes executed by plaintiff from 1983 through mid-1985, "only five (5) were paid after sixty (60) days of the due date. Of these five, two notes were for the immovable property which defendant said would not have to be paid until the federal ... funds were received."
Such dealings, it is asserted, effectively led the business to believe that as long as a sufficient repayment stream existed the bank would continue to operate in the same fashion. However, in July 1985, CBD allegedly advised the company that the amount due on the interim financing for the immovable property would immediately be debited against a corporate account. Interestingly, the petition does not indicate *797 that the financial institution ultimately required payment in that manner, although a second supplemental petition seeks damages for six specified notes being "prematurely declared due." Another averment states that the bank also later informed plaintiff that future short-term financing would be provided only upon deposit of twenty-five percent of the purchase price of each press sold, or receipt of an acceptable letter of credit from the buyer of the item.
According to the petition, Bespress's president, Therrell Pierce, "was told" by one of the bank's directors that the changes in financing stemmed from Myrick's "personal animosity" and "vendetta" directed at Pierce, and from an effort to impress bank examiners. It is further stated that the indicated modifications of the commercial arrangement eventually forced both the collapse of the enterprise and its sale to a competitor. Defendant's actions, as characterized by one of the supplemental pleadings, constituted a breach of good faith and fair dealing, and violated CBD's fiduciary duties "that arose as a result of the financing arrangement between the defendant and the plaintiff."
In addressing the exception of no cause of action, the district court concluded that the petition did not sufficiently set forth either a breach of contract or the violation of any argued-for, or implied, duty of good faith dealing. The trial judge further found that under Louisiana law "banks owe absolutely no fiduciary duty to their borrowers in a lender/borrower commercial context, unless there is an express contractual agreement creating the duty," and that no such relationship had been alleged. When plaintiff failed to avail itself of a thirty-day period granted for amendments to the pleadings, and subsequent to the signing of a judgment of dismissal, this appeal ensued.
Terming its suit as asserting lender liability, plaintiff argues that the petition sufficiently alleges that, precipitated by improper motivations, i.e., "personal animosity," the modifications of the lending arrangement constitute a breach of the good faith requirement implicit within every contractual obligation.

DISCUSSION
Of course, the legal principles regarding an exception of no cause of action are well settled. Its function, to test the legal sufficiency of the petition, necessitates that the exception be tried solely on the face of the papers. In deciding that issue, all well-pleaded facts of the petition and any attached documents shall be accepted as true. LSA-C.C.P. Art. 931; Kuebler v. Martin, 578 So.2d 113 (La.1991); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984); Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Haskins v. Clary, 346 So.2d 193 (La.1977).
The pleadings must also be reasonably construed with an eye toward affording litigants their day in court, arriving at the truth, and rendering substantial justice. See LSA-C.C.P. Art. 865; Kuebler, supra; Haskins, supra. Cf. Teachers' Retirement System v. La. St. Employees' Retirement System, 456 So.2d 594 (La.1984). Hence, when it can reasonably do so, the court should sustain the sufficiency of a petition in order to allow the plaintiff an opportunity to present his evidence. Kuebler, supra; Haskins, supra; CNB v. Audubon Meadow Partnership, 566 So.2d 1136 (La.App. 2d Cir.1990).
The primary thrust of the present petition is directed at the bank's allegedly violative demand for a more secured position respecting future transactions. Yet plaintiff does not factually allege the existence of a line of credit or other agreement mandatorily obligating CBD to continue funding the enterprise's operations.[1] In this respect, the pleadings simply do not set forth an actionable cause. See CNB, supra. Nor, as correctly concluded by the district judge, do such facts indicate CBD owed a fiduciary obligation to plaintiff. *798 See, Id.; Busby v. Parish Nat. Bank, 464 So.2d 374 (La.App. 1st Cir.1985), writ denied, 467 So.2d 1132 (La.1985). See also LSA-R.S. 6:1124, enacted in 1991 by the legislature, "clarifying [the law] and ... apply[ing] to prior and now existing relationships and transactions involving financial institutions." Pursuant to this statute, unless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties.[2]
Relying upon the directive of LSA-R.S. 10:1-203 that commercial transaction contracts be performed in "good faith," plaintiff also argues that the presently pled facts are actionable as disclosing a "bad faith" exercise of contractual discretion. Coincidentally, in CNB, we expressly declined to decide the availability vel non of such a cause of action. Here again, we find it unnecessary to reach the issue.
Instead, the supplemental pleadings further allege that the financial institution breached six specifically listed notes by "prematurely declar[ing] due" their payment. Hence, irrespective of contended breaches of good faith, the allegations accord plaintiff the opportunity to introduce evidence at trial showing that these instruments required remittance only on a fixed date, and that defendant's unseasonable actions constituted a violation of these terms.[3] Therefore, in this narrow respect, the pleadings set forth facts that, if true, state a cause of action for breach of contract.

CONCLUSION
Inasmuch as the petition avers a cause of action on the above indicated basis, the exception should be overruled. Accordingly, the judgment of dismissal is reversed, with the matter now remanded to the trial court for further proceedings consistent with this opinion.
Costs of the appeal are assessed against appellee.
REVERSED AND REMANDED.
NOTES
[1] Nor does a course of dealing operate to create such an agreement. As LSA-R.S. 10:1-205(3) provides, a "course of dealing" is restricted to a sequence of conduct previous to the agreement, and merely "give[s] meaning to and supplement[s] or qualif[ies] terms of an agreement." (Emphasis added.)
[2] As previously mentioned, the petition also avers that a director informed Pierce that the personal animosity and vengeance of CBD's president, Myrick, prompted the changed financial arrangement. Taken literally, however, plaintiff's pleadings do not forthrightly assert that such ill will actually provided the motivation for the bank's actions. Moreover, as we have further indicated, no contract concerning future transactions is alleged to have even existed. Regardless, for reasons discussed infra, we need not additionally consider the contention at this juncture.
[3] It is also conceivable, of course, that the instruments required payment upon demand. See LSA-R.S. 10:3-108, partially defining when paper is payable on demand. See also Johnston v. Johnston, 568 So.2d 567 (La.App. 5th Cir.1990), writ denied, 571 So.2d 655 (La.1990), observing that even a provision for monthly installments does not necessarily destroy the demand nature of a note. At one point in brief, defendant refers to certain demand instruments but also implies, in other comments, that portions of the short-term financing had been granted in loans of another type. In any event, the issue of whether the bank's actions emanated from demand or fixed-date instruments cannot be resolved within the present exception. See LSA-C.C.P. Art. 931. The matter may be addressed, however, on a motion for summary judgment or trial of the merits.

Parenthetically, to the extent plaintiff's action hinges thereon, we reject the proposition that a good faith requirement is imposed on the right to call for payment of demand instruments. In our view, the decision to request payment of such an instrument simply does not fall within the good faith connotations of LSA-R.S. 10:1-203 and 1-208. Similar determinations have been reached by courts interpreting the Uniform Commercial Code in other states. See, e.g., Seattle-First Nat. Bk. v. Westwood Lumber, Inc., 65 Wash.App. 811, 829 P.2d 1152 (Wash.Ct.App.1992), reconsideration denied; Power Equipment Co., Inc. v. First Ala. Bk., 585 So.2d 1291 (Ala.1991); Flagship Nat. Bk. v. Gray Distribution Systems, 485 So.2d 1336 (Fla.Dist.Ct.App.1986), review denied; Centerre Bk. v. Distributors, Inc., 705 S.W.2d 42 (Mo.Ct.App.1985); Fulton Nat. Bk. v. Willis Denney Ford, Inc., 154 Ga.App. 846, 269 S.E.2d 916 (1980). See also Comment, Lender Liability: Good Faith and Demand Notes, 64 Tul.L.Rev. 187 (1989); Comment, Good Faith Theories of Lender Liability, 48 La.L.Rev. 1181 (1988). Indeed, the U.C.C. official comments to Section 1-208 expressly state that provision does not apply to demand instruments.