HOLLIS et al., Appellants,

v.

CENTRAL TRUST COMPANY, Appellee.

[Cite as *Hollis v. Cent. Trust Co.* (1994), 93 Ohio App.3d 94.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64498.

Decided Feb. 7, 1994.

*Paul H. Hentemann,* for appellants.

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., David L. Simiele* and *Edward D. Murray,* for appellee.

---

SPELLACY, Judge.

Plaintiffs-appellants Arthur G. Hollis and Industrial Machine Company ("Industrial") (collectively "appellants") appeal from the trial court's entry of summary judgment in favor of defendant-appellee Central Trust Company[1] ("appellee"). Appellants raise the following assignment of error:

"The trial court erred in granting the motion for summary judgment of defendant-appellee Central Trust Company as genuine issues of material fact existed regarding whether the defendant-appellee, through its agent, improperly reduced the inventory collateral in violation of the formula agreement."

### I

Appellants brought this breach-of-contract action alleging that appellee improperly altered the collateral formula that determined the amount of Industrial's line of credit. Appellee moved for summary judgment, arguing that the terms of

---

1. Central Trust Company is apparently now known as Bank One, Akron, N.A.

the loan agreement allowed it to alter the collateral formula and that it was not subject to a good faith limitation because the line of credit was based on a demand note. The trial court granted appellee's motion.

Evidentiary materials reveal the following:

In June 1986, Industrial and appellee entered into a loan agreement under which Industrial executed a $350,000 demand note and appellee extended a $350,000 line of credit on the condition that:

"Advances under the line of credit [would] be in such principal amounts as * * * request[ed] up to, but not exceeding in the aggregate principal amount at any time outstanding, the lesser of (a) the line of credit, or (b) an amount equal to the after-formula collateral, both of which may change from time to time at [appellee's] discretion or such other formula as [appellee might] adopt."

Appellee also extended a $450,000 term loan to Industrial.

In July 1987, appellee and Industrial agreed to a $150,000 bridge loan. Industrial executed a $150,000 demand note and provided appellee with a payback schedule, which appellee accepted. Industrial retired this bridge loan by May 1, 1988, apparently ahead of schedule.

Employees for Industrial aver that in March 1988, without notice, appellee altered the collateral formula on Industrial's line of credit, reducing the aggregate principal amount from $320,850 to $118,808. They further aver that Industrial eventually had to discontinue business because of this reduction in credit. Appellee's loan officer responsible for the loan avers that he does not recall altering the collateral formula.

## II

In their assignment of error, appellants contend the trial court erred when it entered summary judgment because genuine issues of material fact existed regarding whether appellee improperly reduced the collateral formula.

Civ.R. 56 governs our review. In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, the court stated that:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

The moving party bears the burden of showing that no genuine issue exists as to any material act. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. After the moving party produces evidence in support of its motion, the non-moving party must produce evidence upon any issue for which it bears the burden of production. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Appellants argue that, irrespective of the terms of the loan agreement, appellee breached its duty of good faith by altering the collateral formula. Appellants argue a duty of good faith arose from R.C. Chapter 1301 (UCC), the loan agreement and course of conduct, and the common law.

First, we find that R.C. Chapter 1301 (UCC) does not impose a good faith limitation on the exercise of the right to alter the collateral formula on a demand note. The general rule is that the UCC does not create a good faith limitation on the right to collect on a demand note. *Taggart & Taggart Seed v. First Tenn. Bank Natl.* (E.D.Ark.1988), 684 F.Supp. 230, 235–236; *Fulton Natl. Bank v. Willis Denney Ford, Inc.* (1980), 154 Ga.App. 846, 269 S.E.2d 916, 918. Under R.C. 1301.09 (UCC 1–203), a good faith term is implied into every contract. R.C. 1301.14 (UCC 1–208) provides, more specifically, that:

"A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

R.C. 1301.14 (UCC 1–208), however, is inapplicable to demand notes, as the Official Comment demonstrates:

"Obviously this section has no application to demand instruments or obligations whose very nature permits call at any time with or without reason. This section applies only to an agreement or to paper which in the first instance is payable at a future date."

Second, we find that, even after viewing the evidence most strongly for appellants, reasonable minds could not conclude that either the loan agreement or course of conduct created a duty to use good faith.

Finally, appellants cite *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 275, 6 OBR 337, 340, 452 N.E.2d 1315, 1319, and *K.M.C. Co., Inc. v. Irving Trust Co.* (C.A.6, 1985), 757 F.2d 752, for the proposition that the duty to use good faith arose out of the "common law." *Hoskins* addresses an insurer's duty to act in

**98**

good faith when settling third-party claims and is inapplicable.  *K.M.C. Co.* bases its holding on the UCC, which we have already found does not create a good faith limitation.

Accordingly, appellants' assignment of error is not well taken.

*Judgment affirmed.*

PATTON, P.J., and MATIA, J., concur.