[Cite as *Union Bank v. Car Mart Auto Group, Inc.*, 2012-Ohio-5944.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

THE UNION BANK COMPANY,

    PLAINTIFF-APPELLEE,                 CASE NO. 12-12-06

    v.

CAR MART AUTO GROUP, INC., ET AL.,       O P I N I O N

    DEFENDANTS-APPELLANTS.

Appeal from Putnam County Common Pleas Court
Trial Court No. 2010 CV 00027

**Judgment Affirmed**

Date of Decision: December 17, 2012

APPEARANCES:

    *Richard M. Kerger and Stephen D. Hartman* for Appellants

    *Thomas P. Dillon and Nicholas T. Stack* for Appellee

Case No. 12-12-06

**WILLAMOWSKI, J**.

{¶1} Although originally placed on our accelerated calendar, we elect, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} Defendants-Appellants, Car Mart Auto Group, Inc., et al.[1] ("Car Mart"), appeal the judgment entry of the Putnam County Court of Common Pleas granting summary judgment in favor of Plaintiff-Appellee, Union Bank, on Car Mart's lender liability counterclaims. On appeal, Car Mart contends that the trial court erred in granting summary judgment in favor of Union Bank when it found that there was no duty of good faith under Ohio Law in a lender-borrower relationship involving demand notes and Car Mart also asserts that there were issues of material fact precluding summary judgment on its "instrumentality" claim. For the reasons set forth below, the judgment is affirmed.

{¶3} Union Bank provided Car Mart's used car business with a number of loans between 2005 and 2010. The loan agreements provided terms for a revolving line of credit to fund the operating needs of Car Mart, a revolving "floor plan" line of credit to purchase used vehicles for resale, and a commercial real estate loan to build a new sales facility in Findlay, Ohio. To obtain the loans, Car

---

[1] The named Defendants-Appellants are Car Mart Auto Group, Inc. (Statutory Agent, S. Craig Nienberg), Car Mart Real Estate, LLC (Statutory Agent, S. Craig Nienberg), and Stephen Craig Nienberg, owner of the Car Mart Auto Group, Inc., which, during various times, had auto sales facilities in Hancock and Putnam Counties.

Mart signed four cognovit notes, with the terms stating that the loans were payable in full immediately upon the lender's demand.

{¶4} In early 2010, Union Bank called the loans and filed suit on the cognovit notes. The February 8, 2010, complaint asserted six claims, four of which stated that Car Mart was in default on the four cognovit notes and that Union Bank was entitled to judgment in the amount of $1,196,642.08, plus interest, costs and attorney fees. The fifth claim sought damages "in excess of $25,000," alleging that Car Mart's improper actions caused it to be unjustly enriched to the detriment of Union Bank.[2] The sixth claim requested that a "Receiver" be appointed to manage and sell the business and assets of Car Mart Auto Group, Inc.

{¶5} An attorney answered and confessed judgment on behalf of Car Mart. The trial court entered judgment on the four cognovit notes in favor of Union Bank on February 12, 2010. The trial court's judgment entry stated that the fifth and sixth claims for relief would be continued, but it contained Civ.R. 54(B) language concerning the judgments on the cognovit notes. The trial court also granted Union Bank's motion to appoint a Receiver.

{¶6} On June 22, 2010, Car Mart filed a counterclaim against Union Bank for (1) breach of the duty of good faith and (2) for lender liability based upon the

---

[2] Union Bank asserted that Car Mart purchased and sold at least ten vehicles "out of trust," without tendering either titles or sale proceeds to Union Bank, and that Car Mart also sold five vehicles, the title to which Union held, but failed to tender to Union the proceeds of those sales as required.

instrumentality theory set forth in *Krivo Industrial Supply v. National Distillers*, 483 F.2d 1098 (5th Cir.1973). Car Mart maintained that the Uniform Commercial Code required a duty of good faith on the terms of the note under R.C. 1301.304[3] and R.C. 1301.309.[4] Therefore, Car Mart claimed that Union Bank could only accelerate the payments if there was a good faith belief that the prospect of repayment was impaired. Car Mart argued that Union Bank violated these good faith duties and damage resulted therein. (1/9/12 J.E.)

{¶7} The second claim asserted by Cart Mart was that Union exercised total domination over Car Mart's auto sales business and through Union Bank's misuse of that control, it caused the business to slip into insolvency, thereby causing damages. Car Mart claimed that Union Bank demanded that Car Mart re-floorplan its vehicles every month so that bank regulators and examiners would not notice aged inventory being used for security financing. Car Mart asserted that the "curtailment payments" and other demands made by Union Bank caused the business to have serious cash flow problems and to lose money. Car Mart was eventually no longer able to meet the obligations Union Bank had placed upon it.

{¶8} Union Bank moved for summary judgment on the counterclaims and the trial court ruled in favor of Union Bank on both of Car Mart's "lender liability" claims. The trial court found that an implied duty of good faith does not

---

[3] Formerly R.C. 1301.09, amended and recodified by 2011 H.B. 9, eff. 6-29-11.
[4] This was formerly R.C. 1301.14, which was amended and recodified by 2011 H.B. 9, eff. 6-29-11.

apply to demand notes which, by their very nature, can be called in full or in part at any time, for any reason, or for no reason. The trial court also found that the facts and circumstances necessary to establish an instrumentality claim were not present or applicable in this case. The trial court granted the motion for summary judgment and dismissed Car Mart's counterclaim on January 9, 2012.[5]

{¶9} On March 20, 2012, the trial court approved the final report of the Receiver and granted the parties' stipulated motion to dismiss Union Bank's final claim for unjust enrichment. Thereafter, Car Mart filed this appeal, raising the following two assignments of error for our review.

## First Assignment of Error

**The trial court erred in granting summary judgment on [Car Mart's] counterclaims by finding that there is no duty of good faith under Ohio Law in a lender-borrower relationship involving demand notes.**

## Second Assignment of Error

**The trial court erred by granting summary judgment on [Union Bank's] counterclaims when it ruled that no genuine issue of material fact remained regarding [Union Bank's] control over [Car Mart] under the standard set forth in *Krivo Industrial Supply v. National Distillers*, 483 F.2d 1098 (5th Cir.1973).**

---

[5] Car Mart appealed this decision, but this Court dismissed the appeal as being premature, as the judgment entry was not a final appealable order. *See Union Bank v. Car Mart Auto Group, Inc.*, 3d Dist. No. 12-12-02 (Jan. 23, 2012). Claims still remained open in the underlying case and the trial court's judgment did not contain Civ.R.54(B) language. (*Id.*)

*Summary Judgment*

**{¶10}** Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996–Ohio–336. We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 2000–Ohio–186.

*First Assignment of Error – Duty of Good Faith*

**{¶11}** In the first assignment of error, Car Mart states that the trial court erred when it found that Ohio law did not place an implied duty of good faith on demand notes, such as those involved in Car Mart's loans in this case. Car Mart acknowledges that demand notes are exempt from the obligation of good faith set forth in R.C. 1301.309, but claims that the exemption discussed in that statute is *specific* and is applicable only to acceleration clauses. Car Mart argues that the *general* obligation of good faith set forth in R.C. 1301.304 is applicable to demand notes, such as are involved in this case.

**{¶12}** The trial court's decision granting summary judgment to Union Bank cited to *Hollis v. Cent. Trust Co.*, 93 Ohio App.3d 94, 97 (8th Dist.1994), which held that an implied duty of good faith does not apply to demand notes which, by

their very terms, can be called at any time with or without reason. The trial court, as well as the court in *Hollis*, based their decisions upon the provisions of the Uniform Commercial Code ("UCC"), as adopted by Ohio and currently set forth in R.C. 1301.309, titled "Option to accelerate at will," which states:

> A term providing that one party or that party's successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or when the party "deems itself insecure," or in words of similar import, means that the party has power to do so only if that party in good faith believes that the prospect of payment or performance is impaired.

However, Note 1 of the Official Commentary explains the limitations of this section, and specifically excludes "demand instruments" from the good faith requirements set forth in R.C. 1301.309:

> Obviously this section has no application to demand instruments or obligations whose very nature permits call at any time with or without reason. This section applies only to an obligation of payment or performance which in the first instance is due at a future date.

*Hollis*, 93 Ohio App.3d at 97.

{¶13} Car Mart acknowledges this limitation, but claims that this section is only applicable to acceleration clauses, and not demand notes, and that is the reason for the exclusion in the official commentary. However, in making this assertion, Car Mart ignores the additional support and citations listed in *Hollis*, which also conclude that demand instruments are not subject to the good faith requirement set forth in R.C. 1301.309. *See*, *Taggart & Taggart Seed v. First*

*Tenn. Bank Nat'l Ass'n,* 684 F.Supp. 230 (E.D.Ark.1988); *Fulton Nat. Bank v. Willis Denney Ford, Inc.*, 269 S.E.2d 916 (Ga.App.1980).[6] Union Bank maintains that the *Hollis* court's refusal to apply a good faith obligation to a lending relationship based on a demand note merely echoes the opinions of courts across the United States and, in its motion for summary judgment, Union Bank provided a full page of citations from decisions around the nation rejecting Car Mart's interpretation.[7]

{¶14} However, Car Mart asserts that the trial court and the court in *Hollis* were wrong to rely upon this section of the Revised Code/UCC, and it claims that the law that is applicable to demand instruments is R.C. 1301.304, which creates a general obligation of good faith in *every* contract or duty:

> Every contract or duty within Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code imposes an obligation of good faith in its performance and enforcement.

R.C. 1301.304.

---

[6] The court in *Fulton* explained, "Thus, the only 'duty' under the UCC on a holder of a demand instrument is to seek enforcement of the instrument which is on its face 'immediately' due and payable within the applicable statute of limitation. There is no reason why the obligor on an 'immediately' due and payable instrument should be entitled to contest the holder's decision to enforce payment anytime within the statute of limitation as being in 'bad faith.' The obligor, by his signature, has agreed that his obligation is on its face 'immediately' due and payable and is subject to no other contingencies. Qualifying that obligation by requiring that the holder demonstrate his 'good faith' in seeking payment can have no beneficial result for either the holders or makers of demand instruments. As noted, a demand instrument by its 'very nature permits call at any time with or without reason.' Interference with that commercial 'nature' of demand notes is to be avoided." (Citations omitted.)

[7] *See* Union Bank's Aug. 26, 2011 Motion for Summary Judgment, pp. 11-12, incorporated by reference into its Appellee's Brief.

**{¶15}** However, *even if* we were to ignore *Hollis* and the many other courts who have interpreted R.C. 1301.309, or other states' equivalent statutory renditions of this section of the UCC, Car Mart would not be entitled to relief under R.C. 1301.304 for several reasons. For one, "Ohio courts have repeatedly held that 'a lender does not act in 'bad faith' when it decides to enforce its contract rights.'" *Snowville Subdivision Joint Venture Phase I, et al. v. Home S. & L. of Youngstown*, 8th Dist. No. 96675, 2012–Ohio–1342, ¶ 26, quoting *Needham v. The Provident Bank*, 110 Ohio App.3d 817, 831-832 (8th Dist.1996). And, in this case, Union Bank was merely exercising its contract rights that Car Mart had agreed to when it signed the cognovit demand notes.

**{¶16}** Furthermore, the Official Commentary, Note 1, to R.C. 1301.304 states that this section should not be construed to create an independent cause of action.

> *This section does not support an independent cause of action for failure to perform or enforce in good faith.* Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract * * *. This distinction makes it clear that *the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.*

(Emphasis added.) *Id.*

**{¶17}** Car Mart's counterclaim did not involve the interpretation, creation, or enforcement of the underlying contract/cognovit notes. Car Mart stated that it was maintaining an action independent of the notes. Car Mart explicitly maintained that "[t]he Counterclaims allege wrongful conduct on the part of Union Bank throughout the relationship between the parties. *Car Mart does not take issue with the judgment on the Notes themselves * * *.*" (Emphasis added.) (Car Mart's Sept. 16, 2011 Mem. in Oppos. to Mtn. for Summary Judgment, pp. 2-3)

**{¶18}** Car Mart's position resulted from the fact that it filed its counterclaim against Union Bank many months after the trial court filed its judgment entry on the cognovit notes. It never made any breach of contract claims against Union Bank prior to the time the notes were merged into a final judgment. In its motion for summary judgment, Union Bank had argued that the counterclaim was an improper collateral attack on the trial court's final judgment on the notes. Union Bank argued that the only proper method of challenging the final judgment on the notes was through an appeal or a Civ.R.60(B) motion for relief from judgment.

**{¶19}** Car Mart, however, did neither, and asserted that its counterclaims were independent from the notes.

> [Car Mart is] not seeking relief from the judgments granted based upon the notes. The terms of the notes themselves are not contested, and [Car Mart is] not seeking to reverse the judgments based on those terms. The claims asserted in the counterclaim are based on

> Union Bank's wrongful conduct and not upon the application of the Notes. Car Mart's business did not fail because of the terms of the notes, *but because of the bank's conduct independent of those terms.*

(Emphasis added.) (Memorandum. in Opposition to Summary Judgment, p. 2) Such an independent cause of action is clearly not contemplated or permitted by R.C. 1301.304, so Car Mart's claim of a breach of the duty of good faith must fail under this statute.

{¶20} Therefore, under either R.C. 1301.309 or R.C. 1301.304, Car Mart is precluded as a matter of law from bringing its counterclaim against Union Bank for a cause of action alleging violation of a duty of good faith. Car Mart's first assignment of error is overruled.

*Second Assignment of Error – Instrumentality Doctrine*

{¶21} In its second counterclaim, Car Mart attempted to hold Union Bank liable for its demise under the "instrumentality theory" of liability, which was thoroughly discussed by the Firth Circuit Court in 1973 in *Krivo Indus. Supply v. Natl. Distillers*, *supra*, (actions by ten creditors of a reorganized corporate debtor against the debtor's major creditor on grounds that defendant creditor had dominated the debtor corporation to extent that it became a mere instrumentality of the defendant debtor corporation.) Under that doctrine, "a lender may be held liable * * * when the lender exerts such a degree of control over the borrower that the borrower becomes a mere business conduit for the lender." *FAMM Steel, Inc.*

*v. Sovereign Bank*, 571 F.3d 93, 104 (1st Cir.2009) (citations omitted). The plaintiffs must make "a strong showing that the creditor assumed actual, participatory, total control of the debtor" and the facts must "unmistakably show [] that the subservient corporation was being used to further the purposes of the dominant corporation and that the subservient corporation in reality had no separate, independent existence of its own." *Id.* at 105 (citations omitted).

{¶22} In the case before us now, the trial court granted summary judgment in favor of Union Bank because it found that the facts and circumstances in *Krivo*, and other instrumentality cases, typically involved a creditor seeking a remedy against another creditor of a subservient corporation. The trial court determined that the situation in this case was substantially different from the typical situation in which a *third party* creditor attempts to collect from a dominant creditor corporation that has exerted total control over the subservient corporation, and that the *Krivo* instrumentality doctrine was not applicable. Then, the trial court proceeded to discuss that *even if* the *Krivo* instrumentality test was applied in this situation, Car Mart failed to meet the requirements demonstrating the total control required by *Krivo* to establish that the subservient corporation (Car Mart) manifested no separate corporate interests of its own and functioned solely to achieve the purposes of the dominant corporation (Union Bank). *See Krivo*, 483 F.2d at 1106.

{¶23} On appeal, Car Mart argues that there is nothing in the instrumentality rule that prohibits a borrower from suing its own lender, so therefore, the trial court should not have ruled against it as a matter of law on that point. And then, Car Mart claims that the application of the *Krivo* test requires the evaluation of factual issues, thereby precluding summary judgment.

{¶24} While we find that the trial court was correct in its finding that Car Mart failed to establish the level of control required in a relationship in order to utilize the instrumentality theory, it was not necessary to consider these factual matters. The instrumentality theory has nothing to do with the situation in this case and its attempted application in this type of case is totally misplaced.

{¶25} The instrumentality theory is akin to the piercing of the corporate veil doctrine, or an alter-ego theory of liability, and has been used by third party creditors seeking to hold a lender liable for the debts of a borrower. *See Krivo*, 483 F.2d at 1102. Under the "instrumentality doctrine," a corporation may be held liable for the debts of another corporation when it treats the subservient corporation "as a mere business conduit for the purposes of the dominant corporation." *F.C. Imports v. First Nat. Bank*, 816 F.Supp. 78, 91 (D. Puerto Rico 1993). This doctrine is meant to be merely a means to enable a plaintiff to bring its cause of action against the dominant, or alter-ego corporation – it does not create a separate cause of action against that party.

{¶26} Although it has been close to forty years since the Fifth Circuit's decision in *Krivo*, just three Ohio appellate cases have ever addressed this theory of lender liability. *See Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053. And, although only these few courts have *considered* the matter, albeit, under different factual circumstances, Ohio has never awarded damages to a plaintiff under this theory of liability. *Id.* at ¶ 71.

{¶27} The only case that we are aware of where a borrower has attempted to sue its own lender under the instrumentality theory was decided by the First Circuit Court in 2009, applying Massachusetts law, in a case with facts similar to those in the case before us today. *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93 (steel company that defaulted on its loans and had its assets liquidated brought suit against the bank which provided the loans under multiple theories, including an instrumentality theory, breach of the implied covenant of good faith, and others). The First Circuit Court found that there was no indication that the instrumentality theory would be accepted by the Massachusetts courts, and it also found that the plaintiffs failed to establish the necessary factual criteria. It further stated that:

> [e]ven if Massachusetts were to be hospitable to the instrumentality theory, as utilized in some other states, the theory would not apply here. First, *plaintiffs suggest a radical alteration to the theory*. The instrumentality theory is akin to the piercing of the corporate veil doctrine, and has generally been used by third party creditors seeking to hold a lender liable for the debts of the borrower. *See*

> *Krivo*, 483 F.2d at 1102 (noting, in a suit brought by third party creditors to recover from another creditor on the debts of the borrower, that "[o]ne of the most difficult applications of the rule permitting the corporate form to be disregarded arises when one corporation is sought to be held liable for the debts of another corporation . . . [on the grounds that] it [has] misuse[d] that corporation by treating it, and by using it, as a mere business conduit for the purposes of the dominant corporation.")[.] * * * Here, plaintiffs are debtors seeking to use the instrumentality theory to recover damages from their own creditor. They were not in the least misled as to who their creditor was. *Plaintiffs point to no cases that recognize this novel application of the instrumentality theory*, and there is no indication that such an application would be accepted by the Massachusetts courts.

(Emphasis added.) *FAMM Steel*, 571 F.3d at 104-105.

{¶28} As was the case in *FAMM Steel*, Car Mart has pointed to no authority allowing the "radical alteration" to the instrumentality theory so that it may be used in the "novel application" of allowing a debtor to bring a claim against its own creditor. Car Mart may not properly assert an "instrumentality claim" against Union Bank.

{¶29} There is no legal basis to support the utilization of the instrumentality doctrine to create a cause of action under the facts and circumstances in this case. The second assignment of error is overruled.

{¶30} Having found no error prejudicial to the Appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**