**MIRAX CHEMICAL PRODUCTS CORP.; Oliver C. Clerc, Jr.,**
**Appellants,**

v.

**FIRST INTERSTATE COMMERCIAL CORP., a CA Corp.; First Interstate Corp. of Wisconsin; First Interstate Commercial of Wisconsin, Appellees.**

No. 90–2650.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1991.

Decided Dec. 6, 1991.

■■■■■■■■■■

Dale L. Rollings, St. Charles, Mo., argued (Dale L. Rollings and Thomas A. Federer, on the brief), for appellants.

Harry B. Wilson, St. Louis, Mo., argued (Harry B. Wilson and Mark G. Arnold, on the brief), for appellees.

Before FAGG and BEAM, Circuit Judges, and DOTY,[*] District Judge.

BEAM, Circuit Judge.

This action involves a loan agreement between Mirax Chemical Products Corp. (Mirax) and First Interstate Commercial Corp. (FICC). In essence, Mirax asserts that FICC breached the agreement by terminating it prematurely. The district court granted summary judgment in favor of FICC on the breach of contract claim and also dismissed the Mirax tort claims related to the alleged breach. Mirax appeals. We affirm.

## I. BACKGROUND

On March 25, 1987, Mirax and FICC entered into a loan agreement, in the nature of a line of credit arrangement, which agreement provided that FICC would "lend money to debtor [Mirax] in such amounts as debtor from time to time requests and the Secured Party [FICC], at its option, agrees to lend." The agreement further provided that "[d]ebtor promises to pay Secured Party, on demand, all or any part of the debit balance at any time." The agreement could be "terminated at any time by the Secured Party by written notice to the Debtor" and, in the absence of termination, would continue in effect for two years.

Pursuant to an Equipment Security Agreement executed contemporaneously with the loan agreement, FICC was granted a security interest in Mirax's inventory and receivables. Mirax agreed that its obligation would not exceed the lesser of $1.2 million or a certain percentage of its collateral as set forth in the agreement and that interest charges would be at least $6,000 per month during the term of the agreement. Mirax was also required to furnish FICC with audited financial statements at specific intervals.

In addition, the agreement set forth the conditions that would constitute default and FICC's rights in the event of default. Finally, it contained an integration clause stating "all indebtedness incurred hereunder shall be governed exclusively by the terms of this agreement."

In November 1987, FICC expressed concern with Mirax's financial condition, as revealed to FICC in audited financial statements. FICC stated that it would contemplate reducing loan amounts and would ask to be "paid out of [the] loan" if Mirax were unable to stop its losses. By letter dated January 15, 1988, FICC informed Mirax that it wanted the outstanding balance of credit paid off by April 1, 1988, and that it would begin reducing the rate at which it advanced funds to Mirax by one percent and later two percent. FICC continued loaning funds to Mirax until September 1988 when a new lender paid off the balance.

Mirax then filed this action alleging breach of contract, bad faith, economic duress, and intentional infliction of mental distress. Mirax also sought punitive damages. The district court found that the complaint did not state a claim for economic duress, intentional infliction of mental distress or punitive damages and dismissed those claims.[1] The district court later granted FICC's motion for summary judgment on the breach of contract and bad faith claims.

Mirax argues on appeal that the district court erred as a matter of law in holding

---

[*] The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

1. Mirax does not appeal the dismissal of its claim for intentional infliction of mental distress.

that FICC could terminate the Mirax loan at will; that the district court erred in dismissing the Mirax claims for economic duress and punitive damages; and that the district court abused its discretion in denying a Mirax motion for a continuance under Fed.R.Civ.P. 56(f).

## II. DISCUSSION

▮▮▮ In reviewing a Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim, we accept the allegations in the complaint as true. The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *DeYoung v. Patten*, 898 F.2d 628, 631 (8th Cir.1990). We use the same standard as the trial court in reviewing the entry of summary judgment. *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981). Summary judgment may be granted where no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Additionally, all facts must be viewed in the light most favorable to the party opposing the motion for summary judgment and the opposing party must be given the benefit of all reasonable inferences. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir.1980).

### A. Breach of Contract

▮▮▮ Mirax contends that the contract is ambiguous about whether FICC could terminate the contract at will. Mirax asserts that the enumeration of events of default, the requirement of a collateral-obligation ratio and the closing fee (which it characterizes as a commitment fee) are inconsistent with a demand note and argues that the agreement is a term note. Under Wisconsin law,[2] a written contract is ambiguous if it is reasonably and fairly susceptible to more than one construction.

*Jones v. Jenkins*, 88 Wis.2d 712, 277 N.W.2d 815, 819 (1979). A court may not depart from the plain meaning of a contract where it is free from ambiguity. *Hortman v. Otis Erecting Co.*, 108 Wis.2d 456, 322 N.W.2d 482, 484 (Ct.App.1982). We find that the document is not ambiguous and clearly provides FICC with a right to terminate the contract at will.

▮▮▮ There is nothing in the contract which indicates that the contract is a term note. The specification that the agreement continue for a term of two years is expressly limited by the language, "[i]n the absence of such termination by the Secured Party." A listing of events which constitute default is not necessarily incompatible with a terminable at will contract. The section of the contract dealing with default grants FICC additional, extra-judicial remedies on the occurrence of default.[3] This adds to FICC's rights, but does nothing to alter the fact that the agreement is terminable at will.

▮▮▮ Mirax's characterization of the closing fee as a commitment fee[4] also lacks foundation. The fee is expressly denominated in the contract as a closing fee and is nowhere referred to as a commitment fee. Interpretation of the fee as a commitment fee would be in direct opposition to the plain language of the agreement which expressly provides in section one that FICC shall lend only such amounts as it from time to time agrees to lend. Moreover, the requirement of periodic audited financial statements is not consistent with a loan for which the lender is committed for a specific period of time. There is no need to require financial reports if the lender is unconditionally obligated in any event. Neither does the collateral-obligation ratio conflict with a terminable at will interpretation. The requirement that Mirax maintain a cer-

---

**2.** As set forth in the loan agreement, the law of Wisconsin governs this dispute.

**3.** These included the right of FICC to assemble collateral, collect and handle receivables (including the right to open, receive and dispose of all debtor's mail and to endorse any notes, drafts or checks pursuant to a power of attor-

ney), protect and preserve collateral, and charge the debtor the costs of doing so.

**4.** A commitment fee is often viewed as consideration for an irrevocable line of credit. *See, e.g., Shaughnessy v. Mark Twain State Bank*, 715 S.W.2d 944, 954 (Mo.Ct.App.1986).

tain level of inventory does no more than ensure that Mirax did not borrow above the amount of FICC's security interest.

In support of its position, Mirax principally relies on *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9 (1st Cir.1987) and *Shaughnessy v. Mark Twain State Bank*, 715 S.W.2d 944 (Mo.Ct.App.1986). Both of those cases are inapplicable for the reason that the contracts at issue were ambiguous. The document at issue here simply does not contain inconsistencies.

### B. Bad Faith

■ Under the U.C.C.,[5] the parties are charged with a general duty of good faith and fair dealing. Wis.Stat. § 401.203 (1989–1990). That duty, however, cannot be breached by actions that are specifically authorized in the agreement. *Super–Valu Stores, Inc. v. D–Mart Food Stores, Inc.*, 146 Wis.2d 568, 431 N.W.2d 721, 726 (Ct. App.1988). In this case, all of FICC's acts were authorized and cannot constitute bad faith.

In a term note, a provision that one party "may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import is construed to mean that he has power to do so only if he believes in good faith that the prospect of payment or performance is impaired." Wis.Stat. § 401.208 (1989–1990). The burden of establishing lack of good faith is on the party against whom the power has been exercised. *Id.*

■ Section 401.208 has no application to demand instruments or obligations whose very nature permits call at any time or without reason. U.C.C. § 1.208 cmt. (1989). Because we find that the agreement is such a demand obligation, section 401.208 has no application to this agreement. Even if it were applicable, Mirax has not met its burden of establishing lack of good faith. It is undisputed that Mirax was suffering considerable losses which were revealed to FICC in the financial statements. If FICC needed a reason to feel insecure, it surely had one.

### C. Economic Duress and Punitive Damages

■ In order to state a claim for economic duress, a plaintiff must allege that: 1) he has been the victim of a wrongful act or threat; 2) such act deprives him of his unfettered will; 3) as a result of these elements, he must be compelled to make an uneven exchange or to give up something for nothing for the sole purpose of protecting his business or property interests; and 4) he has no adequate remedy at law. *Wurtz v. Fleischman*, 97 Wis.2d 100, 293 N.W.2d 155, 160 (1980). Merely driving a hard bargain or taking advantage of another's financial difficulty is not duress. *Id.*

■ The alleged acts were most likely not wrongful and the allegations do not describe a deprivation of unfettered will. Additionally, Mirax has not alleged that it has no adequate remedy at law. In fact, the Mirax breach of contract claim seeks damages identical to those sought in its tort claim. It is thus clear on the face of the complaint that Mirax has an adequate remedy at law. Consequently, Mirax fails to state a claim for economic duress. Mirax's claim for punitive damages is premised upon its economic duress claim and similarly fails.

### D. Denial of Continuance

■ Mirax also assigns error in the district court's denial of its motion for a continuance to conduct further discovery. Trial courts have the discretion to enter a summary judgment without additional discovery if there is no evidence of what further discovery could produce. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir.1990). There has been no showing that the district court abused its discretion in this case.

**5.** At oral argument, the parties conceded that the agreement is governed by Article 9 of the U.C.C. Although Article 9 also imposes duties of good faith, we find nothing in Article 9 which alters our analysis.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.