SHAWMUT BANK, N.A. *vs.* ALLEN MILLER & another.[1]

Suffolk. April 7, 1993. - June 9, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Uniform Commercial Code*, Bank, Payment on negotiable instrument, Good faith. *Negotiable Instruments*, Note, Payment.

An undated negotiable note promising "to pay, on demand to the [bank] or order . . . an amount not to exceed [$1,000,000]" was a demand note, despite supplemental language limiting the rights the bank otherwise would have had as the holder of a straightforward demand note, and summary judgment was properly granted in the bank's favor in its action against the guarantors on the note, inasmuch as it was of no consequence whether the bank was acting in good faith in deciding to demand payment of the balance due on the note. [483-489]

CIVIL ACTION commenced in the Superior Court Department on August 27, 1990.

The case was heard by *Catherine A. White*, J., on a motion for summary judgment, and motions for an assessment of damages and for entry of judgment were heard by *Barbara A. Dortch*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard M. Passalacqua* for the defendants.

*Howard M. Brown* (*Richard E. Gentilli* with him) for the plaintiff.

*Anthony M. Feeherry, Leigh P. Perkins & Jacqueline Scott Corley*, for Massachusetts Bankers Association, Inc., amicus curiae, submitted a brief.

---

[1]Davida Miller. Miller Furs, Inc. (Miller Furs), was a named defendant. A suggestion of Miller Furs's bankruptcy was filed, and a stipulation of dismissal has been entered as to Miller Furs.

WILKINS, J. The Millers, guarantors of a note given to the Framingham Trust Company, which has since merged into the plaintiff bank (bank), appeal from a judgment on the note entered against them following allowance of the bank's motion for summary judgment and the dismissal of the Millers' counterclaim.[2] We transferred the Millers' appeal to this court on our own motion and now affirm the judgment.[3]

In May, 1987, Miller Furs, Inc., executed a revolving note payable to the plaintiff bank's predecessor.[4] The note states that Miller Furs promises "to pay, on demand to the [bank] or order . . . an amount not to exceed [$1,000,000]." The Millers each individually guaranteed the obligations of Miller Furs to the bank. For the purposes of this appeal, the obligations of the Millers and the rights of the bank against them are the same as the obligations of Miller Furs and the rights of the bank against Miller Furs.

The dispute focuses on the question whether the bank must have been acting in good faith when, in July, 1990, it demanded payment of the note. Because of language in the loan documents, which we shall set forth subsequently, the Millers argue that the note is not a demand note, that the bank had to be acting in good faith in calling the note, and

---

[2]The Millers do not assert any argument on appeal concerning the dismissal of their counterclaim.

[3]On April 2, 1993, the Massachusetts Bankers Association, Inc., filed a motion to file a brief as amicus curiae supporting the position of the bank. The allowance of such belated request, coming well after any brief as friend of the court should have been filed and within a week of scheduled oral argument, could prejudice any party to the appeal who disagrees with the position taken in the proposed brief filed as a friend of the court. The Millers argue in opposition to the allowance of the motion to file that they had inadequate time to respond to that brief. The proposed brief does not present any reasoning different from that advanced by the bank. The Millers did not ask for leave to file a reply to the amicus brief, nor did they request a delay in oral argument of the appeal.

We favor receiving well-prepared briefs filed by amici curiae, provided that they deal only with issues presented by the parties to the appeal. We allow the motion to file a brief as amicus curiae.

[4]We shall hereafter refer to the predecessor bank and the plaintiff simply as the bank.

that, because there are disputes of material fact as to the bank's good faith, summary judgment should not have been granted in the bank's favor. We conclude that the note is a demand note, that the bank agreed to a limitation on the rights that it otherwise would have had as the holder of a straightforward demand note, but that the bank may prevail on summary judgment because it does not matter whether the bank was or was not acting in good faith in deciding to demand payment of the balance due on the note.

The note is a demand note at least because it is an instrument in which no time for payment of principal is stated. See G. L. c. 106, § 3-108 (1990 ed.) ("[i]nstruments payable on demand include . . . those in which no time for payment is stated").[5] The label "demand note" can be somewhat misleading, a sort of tolerated mislabeling, because it is the general rule that a note unconditionally payable on demand is payable immediately without demand. See G. L. c. 106, § 3-122 (1) (*b*) (1990 ed.) ("[a] cause of action against a maker or an acceptor accrues . . . in the case of a demand instrument upon its date or, if no date is stated, on the date of issue"); 13 Mass. Gen. Laws Ann. 450, Massachusetts Code Comment (West 1990) ("demand is unnecessary"); 2 U.L.A. 407, official comment 1 (Master ed. 1991) ("generally accepted rule that action may be brought on a demand note immediately upon issue, without demand"); *Cantor* v. *Newton*, 4 Mass. App. Ct. 686, 691 (1976); *Jenkins* v. *Karlton*, 329 Md. 510, 517 (1993). Thus, the general rule is that a holder of a demand note properly may bring suit on the note without first demanding payment of the balance due on the note (*Cassiani* v. *Bellino*, 338 Mass. 765, 767 [1959]) and also may on its own motion set off the balance due under

---

[5]This section of the Uniform Commercial Code (UCC) does not purport to be an all-inclusive definition of demand instruments. The recently proposed revision of art. 3 of the UCC, not yet adopted in the Commonwealth, contains a comprehensive definition of a demand instrument, and there is no doubt that the note in this case, being payable on demand and having no date for payment, is a demand note under revised § 3-108 (2 U.L.A. 33 [Master ed. 1991]).

the demand note against the maker's unencumbered assets in the bank's possession (see *Krinsky* v. *Pilgrim Trust Co.*, 337 Mass. 401, 405 [1958]). Not only is the balance due on a traditional demand note collectible without demand, but also a holder of such a note may determine to collect the balance due for any reason, good or bad. Good faith is not a condition of a holder's decision to collect the amount due on a demand note. See, e.g., *Mirax Chem. Prods. Corp.* v. *First Interstate Commercial Corp.*, 950 F.2d 566, 570 (8th Cir. 1991); *Kham & Nate's Shoes No. 2, Inc.* v. *First Bank*, 908 F.2d 1351, 1357-1358 (7th Cir. 1990); *Taggart & Taggart Seed, Inc.* v. *First Tenn. Bank*, 684 F. Supp. 230, 235-236 (E.D. Ark. 1988), aff'd, 881 F.2d 1080 (8th Cir. 1989); *Spencer Cos.* v. *Chase Manhattan Bank, N.A.*, 81 B.R. 194, 199 (D. Mass. 1987); *Pavco Indus., Inc.* v. *First Nat'l Bank*, 534 So. 2d 572, 577 (Ala. 1988); *Flagship Nat'l Bank* v. *Gray Distrib. Sys., Inc.*, 485 So. 2d 1336, 1340 (Fla. Dist. Ct. App. 1986); *Fulton Nat'l Bank* v. *Willis Denney Ford, Inc.*, 154 Ga. App. 846, 848 (1980); *Waller* v. *Maryland Nat'l Bank*, 95 Md. App. 197, 216-217 (1993); *Simon* v. *New Hampshire Sav. Bank*, 112 N.H. 372, 375 (1972). Cf. *Westinghouse Credit Corp.* v. *Hall*, 144 B.R. 568, 576 (S.D. Ga. 1992). These opinions reject any claim that G. L. c. 106, § 1-208 (1990 ed.), imposes a duty of good faith in the enforcement of the obligation of a demand note.[6] The official comment to § 1-208 makes clear that § 1-208 was not intended to apply to demand notes. "Obviously this section has no application to demand instruments or obligations whose very nature permits call at any time with or without reason. This section applies only to an agreement or to paper which

---

[6]The first sentence of § 1-208 reads as follows: "A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired."

in the first instance is payable at a future date."[7] 1 U.L.A. 152, official comment (Master ed. 1991).

Because the benefits to a holder of a demand note are well-recognized, it is understandable that the bank argues that the case may be disposed of simply by the fact that the note says that it is payable on demand and is a demand note under the provisions of the Uniform Commercial Code. Equally understandable is the Millers' attempt to demonstrate that the note is not a pure demand note which became due and payable when it was issued, and that, when the bank decided to demand payment, it could do so only if it were acting in good faith. It is true that a note stating that it is due and payable on demand, when read in conjunction with other provisions in the note or other loan documents, might

---

[7]The Millers do not rely on G. L. c. 106, § 1-203, which states a general obligation that "[e]very contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement." There is strong authority against the importation of a § 1-203 good faith obligation into the decision of a holder of a demand note to exercise the express right to collect on the note. Courts reject the application of § 1-203 to demand notes for various reasons. Some conclude that the inapplicability of the good faith provisions of § 1-208 answers the question as to § 1-203's role. See *Taggart & Taggart Seed, Inc.* v. *First Tenn. Bank, 684 F. Supp. 230,* 235-236 *(E.D. Ark. 1988), aff'd, 881 F.2d 1080 (8th Cir. 1989); Pavco Indus., Inc.* v. *First Nat'l Bank,* 534 So. 2d 572, 576-577 (Ala. 1988). The idea that § 1-203 may not properly override an express term of the contract is stated in *Mirax Chem. Prods. Corp.* v. *First Interstate Commercial Corp.,* 950 F.2d 566, 570 (8th Cir. 1991); in *Flagship Nat'l Bank* v. *Gray Distrib. Sys., Inc.,* 485 So. 2d 1336, 1340 (Fla. Dist. Ct. App. 1986); and in *Fulton Nat'l Bank* v. *Willis Denney Ford, Inc.,* 154 Ga. App. 846, 848-849 (1980), citing 1 Anderson, Uniform Commercial Code 165, § 1-203:3 (2d ed. 1970). See Nation, Recognition and Enforcement of Demandable Notes, 23 UCC L.J. 51, 77-78, 91 (1990). There is merit in the principle that the parties to a loan should be able to agree that the lender may at will collect the balance due on a demand note without the application of an unbargained for obligation of good faith. See *id.* at 76.

In *Diversified Foods, Inc.* v. *First Nat'l Bank,* 605 A.2d 609, 613 (Me. 1992), the court announced that § 1-203 (with UCC § 1-201) imposes a subjective duty of good faith with respect to a demand instrument, but the opinion provides no reasoning to support that conclusion, nor does it explain in what respect, if at all, § 1-203 imposes a duty of subjective good faith in the decision to demand payment of amounts due on a demand note.

in fact be payable on demand only if the maker defaults on an obligation stated in the loan documents. See *Bank One* v. *Taylor,* 970 F.2d 16, 31-32 (5th Cir. 1992); *Reid* v. *Key Bank,* 821 F.2d 9, 13-14 (1st Cir. 1987). Compare *Diversified Foods, Inc.* v. *First Nat'l Bank,* 605 A.2d 609, 614 n.6 (Me. 1992) (note states that default conditions do not change demand nature of note); *Simon* v. *New Hampshire Sav. Bank,* 112 N.H. 372, 374 (1972) (provision explicitly preserving right to demand payment at any time prevents provisions for installment payments of debt from converting demand note to installment note).

In support of their position, the Millers point first to language in the revolving note. The revolving note provides that, upon certain events occurring,[8] the bank at its option could determine that the note "shall become and be due and payable forthwith *without demand,* notice of nonpayment, presentment, protest or notice of dishonor" (emphasis supplied). As we have said, if this note is a garden variety demand note, it became due and payable at its inception, and no demand was needed to make it due and payable. The note's supplemental language thus would be superfluous if in all instances the note were due and payable without demand. We should not deny parties a right to bargain that a note will be due and payable only on the making of a demand except in certain stated circumstances. See *Spencer Cos.* v. *Chase Manhattan Bank,* 81 B.R. 194, 198 (D. Mass. 1987). We, therefore, give effect to this supplemental language, and conclude that the note was due and payable only on demand, unless one of the stated conditions obviating demand were to occur. Although the bank's rights under the note were, therefore, less robust than they would have been under a simple demand note, we see no reason to conclude that the supplemental language in the note altered the traditional rule that good

---

[8]Among the events whose occurrence would make the note due and payable without demand were: the failure to pay interest when due; the death or insolvency of Miller Furs or either Miller; the failure of a guarantor to pay his or her debts when due; and default under the security agreement executed with the note.

faith is not a necessary component of a holder's decision to collect the balance due on a demand note. Cf. Nation, Recognition and Enforcement of Demandable Notes, 23 UCC L.J. 51, 77-78 (1990).

In their argument that the note is not a demand note, the Millers turn next to language in a security agreement that Miller Furs executed at the same time that the note and personal guaranties were executed. The security agreement, expressed in a printed document prepared by the bank, provides that, upon the happening and continuance of certain events or conditions, the "Bank may declare all of the Obligations to be immediately due and payable." Here the bank indicated through its standard form of security agreement that the balance on the revolving note would be due and payable only if one of the events or conditions listed as a default in the security agreement were to occur. This provision in the security agreement certainly reinforces the provision in the note that the note is not due and payable in all instances without demand. One default condition stated in the security agreement is "default in the payment or performance of any of the Obligations or of any covenant or liability contained . . . in any note evidencing any of the Obligations." Thus, any failure to perform an obligation contained in any associated note would be a default under the security agreement, making all obligations under the note immediately due and payable. See *Waller* v. *Maryland Nat'l Bank*, 95 Md. App. 197, 223 (1993) (failure to meet demand for payment of note was default under security agreement). A failure to pay the note's balance due on demand, of course, would be a failure to perform an obligation under the note. Consequently, for the purposes of this case, the security agreement in effect made no change in the rights and obligations of the parties already expressed in the note. The note remained a demand note but due and payable only upon a demand actually being made. The parties made no agreement, however, that modified the general rule that good faith is not an essential ele-

ment of a holder's decision to demand payment of the amount due on a demand note.[9]

The Millers make a general claim that certain actions of the bank, taken collectively, were "so malevolent and deplorable" as to bar the bank from recovering on their guaranties. As we have said, the bank's good faith was not required in deciding to demand payment of the note. Nor is there any basis for recognizing some equitable protection for the Millers so as to render the demand ineffective. The summary judgment record is barren of any evidence tending to show the bank's post-demand bad faith in the fixing of, and insisting on, the terms under which the bank required payment of the Millers' obligation under the note. We, therefore, need not consider whether good faith is a necessary element of the setting of the terms of a demand for payment when dealing with a demand note having the special qualities of the note in this case.

*Judgment affirmed.*

---

[9]When the bank demanded payment of the obligation represented by the note, it expressed concern over Miller Furs's poor financial performance and stated the time within which Miller Furs had to arrange to pay the debt or to provide a reasonable plan to repay the debt. Because we conclude that the bank could demand payment of the obligation of the note without reason and even in bad faith, we need not consider whether the bank's concern was expressed in good faith or with any other state of mind.