Fremont-Smith, J.
This action was brought by Shawmut Bank (“Shawmut”) to collect the outstanding balance on a number of loans for which the defendants were either the borrowers or the personal guarantors. Defendants filed a counterclaim against Shawmut alleging breach of covenant of good faith and fair dealing (Count I), violations of 93A (Count II), violations of Article 9 of the Uniform Commercial Code (Count III) and breach of contract (Count IV). On May 14, 1992, this court (White, J.) granted summary judgment in Shawmut’s favor on Count III of the counterclaim and partial summary judgment on Count I, insofar as that count alleged express contractual violations. The remaining counts of the counterclaim, and the defendants’ defenses, all arise out of a series of acts taken by Shawmut in its attempts to collect on the outstanding debts. Defendants argue that these actions were undertaken in bad faith or with bad motives. This action is now before the court on the plaintiffs renewed motion for summary judgment on the complaint and the remaining counts of the counterclaim. For the reasons outlined below, the plaintiffs motion is ALLOWED.
BACKGROUND
The undisputed facts[1] are as follows:
Shawmut is the successor in interest to the Arlington Trust Company. At some time during 1986, Lowell Lumber[2] executed a $500,000 Revolving Loan Agreement with Discretionary Line of Credit (“Revolving Loan” or “Demand Note”). On January 23, 1989, after Shawmut had taken over from Arlington Trust. Lowell Lumber reexecuted this loan agreement. The parties vigorously dispute the amount that the new Revolving Loan was intended to represent. The defendants contend that the note was signed in blank but that they understood that the amount to be filled in was to be the same $500,000 amount, rather than $1 million as filled in by the bank. At the same time, the defendants acknowledge that at the time the revolving loan was re-executed, Lowell Lumber had already been advanced close to $1 million on the credit line. The revolving note was a demand note, allowing the bank to demand full payment of the outstanding balance at any time.
*269 Lowell Lumber executed two additional promissory notes in the amount of $50,000 and $30,000. Both of these notes were monthly installment loans. Both contained provisions that if the defendants defaulted on any obligation to Shawmut, it would have defaulted on these loans as well. Additionally, both notes contained a provision that the filing of bankruptcy was a default. In connection with these loans as well as the demand note, the defendants both signed unlimited personal guarantees. Additionally, a security agreement pledged all of Lowell Lumber’s assets as collateral for these loans. The defendants also personally executed an $800,000 promissory note for additional loans which included the same provisions concerning bankruptcy and defaults. For the purposes of this memorandum, the $800,000 loan, the $30,000 loan, and the $50,000 loan are referred to collectively as the “time notes” or “later loans.” The amounts borrowed by the defendants exceeded $1,800,000.
At some point Shawmut Bank began to have concerns about Lowell Lumber’s financial stability as well as the value of Lowell Lumber's assets. A number of meetings were held between Lowell Lumber and Shawmut to discuss these concerns.
On February 15, 1991, representatives of Shawmut met with the defendants ostensibly to discuss Lowell Lumber’s financial situation. At that meeting, Shawmut demanded full payment of the $1 million note and also demanded that the defendants surrender the keys to Lowell Lumber. When the defendants refused to surrender the keys, they were informed that they were in default on the loan and that Shawmut had an attorney in Suffolk Superior Court at that moment filing for an exporte order allowing Shawmut to take possession of their collateral, i.e. Lowell Lumber. In filing for the ex parte order, Shawmut represented to the court that the defendants had defaulted under the terms of the revolving credit line (and personal guarantees) and that the defendants had informed Shawmut that they intended to liquidate its assets since they were unable to continue operations. The defendants deny having ever made such representations to Shawmut and assert, to the contrary, that they had intended all along to continue their operations. They also contend that they had never been late in payment with any loan, and had made all payments until told to stop by the bank. An ex parte order was entered by the court (Barrett, J.) allowing Shawmut to take possession of Lowell Lumber. The defendants filed a motion for the ex parte order to be dissolved but prior to a hearing on the motion, on February 19, 1991, Lowell Lumber filed for bankruptcy protection and Shawmut’s civil action was stayed.
As noted above, all of the time notes contained provisions whereby the filing for bankruptcy automatically put the notes into default. Additionally, all of the time notes contained a provision that if the defendants defaulted on any obligation to the bank, all of the notes would be immediately in default. Shawmut then made a formal demand on Lowell Lumber and on the defendants , as guarantors, for payment of all amounts owed by Lowell Lumber. Defendants, to no one’s surprise, were unable to pay.
Shawmut filed a motion in the bankruptcy action for Relief from the Automatic Stay. This motion was granted on April 3, 1991 allowing Shawmut to repossess and dispose of its collateral. On April 24 and 25, 1991, Shawmut held a public auction to dispose of the assets of Lowell Lumber. Following that sale, the remaining debt owed to Shawmut was $1,554,193.70, which remains unpaid.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to a judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The plaintiff bases this renewed motion for summary judgment on a recently decided Supreme Judicial Court case, Shawmut Bank, N.A. v. Miller, 415 Mass. 482 (1993). Plaintiff argues that all of the defendants’ remaining defenses and counterclaims are essentially assertions that the plaintiff acted in bad faith,[3] and that these defenses and claims must all fail because Miller stands for the proposition that a bank can call a demand note for any or no reason, and that a bank’s bad faith or bad motives are irrelevant in proceeding to collect a demand note. In response, the defendants argue that Miller only establishes the irrelevancy of Shawmut’s good or bad faith and motivation in its decision to demand payment on the loan, but that Miller does not immunize the plaintiffs conduct in demanding or collecting payment.
With regard to Shawmut’s decision to demand payment of the $1 million loan, it is now clear that the issue of the bank’s good or bad faith is indeed irrelevant. In Miller, the Court held that a bank’s “good faith is not a condition of a holder’s decision to collect the amount due on the demand note.” Id. at 485. This being so, Shawmut could have decided to collect the demand note for any or no reason, in good faith or bad.
Turning to the allegations that Shawmut acted in bad faith in the manner in which it attempted to collect payment, the court acknowledges that the defendants have alleged facts which, if proven, would permit a factfinder to conclude that Shawmut did indeed act in bad faith. For example, despite the fact that Shawmut could have demanded payment of the $1 million loan *270 for any or no reason, there is evidence that Shawmut instead represented to this court that the defendants were in default of payments due under the loan; a fact which, at best, was only technically correct. Additionally, the plaintiff represented to this court that the defendants had decided to liquidate their business, a fact which defendants vehemently deny.
Although it is not clear that Milter was intended to immunize such misconduct, here any such misconduct would not have been material. Under Miller, Shawmut needed no justification to collect payment on the note, so that any misrepresentations it made to justify its actions were immaterial and did not affect the outcome. This is because Shawmut could legally have achieved the same result regardless of any such misrepresentations or misconduct.
The defendants argue additionally that, even if Miller immunized Shawmut from claims of bad faith with regard to the demand note, the same cannot be said for the time notes. Shawmut’s misconduct as to the time notes, it is argued, forced the defendants into default and into bankruptcy. This argument, however, was specifically rejected by the Miller court. Id. at 488, citing Waller v. Maryland Nat’l Bank, 95 Md.App. 197, 223 (1993). In Waller, the court noted that when notes or security agreements are tied to a demand note, "[i]t is irrelevant that another event of default may require good faith when the defendants were in default [under the demand note].” Id. at 223.
Similarly, defendants’ assertion that Miller should not be construed to have immunized the bank’s alleged alteration of the demand note from the agreed-upon $500,000 to $ 1 million, is immaterial. Even if the defendants could prove that Shawmut had wrongfully inserted “$1 million” into the loan papers, instead of $500,000 (a fact which is far from clear from the record before the court) ,[4] the agreement clearly stated, in any event, that “the Borrower promises to pay to the Bank on Demand . .. the aggregate debit balance of the loan account,” including all money advanced on the discretionary credit line. Since the defendants admit that approximately $1 million had been advanced on the credit line, Shawmut could legally have demanded payment of the entire $1 million, even had only $500,000 been inserted onto the note.
ORDER
For the reasons stated above, the plaintiffs motion for summary judgment on its remaining claims and on the defendants’ counterclaims, is ALLOWED.

 The court acknowledges that many facts in this case are indeed disputed. Where this is the case, it will be so noted. Summary judgment is still appropriate in this instance because, even deciding all factual disputes in the defendants’ favor, the plaintiff is entitled to summary judgment as a matter of law.

 Throughout the various papers filed in this action, “Lowell Lumber" and “Flynn-Richard's Corporation” are used interchangeably (Flynn-Richard’s was doing business as Lowell Lumber). For the purpose of this memorandum, Lowell Lumber is used throughout.

 This characterization is correct. See p.l, supra

 Throughout their own pleadings, answers, and affidavits the defendants admit that, when the revolving credit line was reexecuted, they owed Shawmut approximately $1 million.