Linda K. O'TOOLE, Plaintiff,

v.

CITY OF WALNUT GROVE,
MISSOURI, et al.,
Defendants.

Case No. 6:16–CV–03332–BCW

United States District Court,
W.D. Missouri, Southern Division.

Signed 09/26/2017

Gillian R. Wilcox, American Civil Liberties Union of Missouri Foundation, Kansas City, MO, Jessie Steffan, Anthony E. Rothert, American Civil Liberties Union of Missouri Foundation, St. Louis, MO, for Plaintiff.

Karl W. Blanchard, Jr., Richard T. Strodtman, Blanchard, Robertson, Mitchell & Carter, Joplin, MO, for Defendants.

## ORDER

JUDGE BRIAN C. WIMES, UNITED STATES DISTRICT COURT

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. # 42).

The Court, being duly advised of the premises, denies said motion.

In August 2016, Plaintiff Linda K. O'Toole filed the above-captioned suit against Defendants the City of Walnut Grove, Missouri ("the City") and the City's mayor, Jim Cole, alleging First Amendment retaliation under 42 U.S.C. § 1983. O'Toole seeks injunctive relief, damages, and attorneys' fees against Defendants, relating to a lawsuit filed by Cole against O'Toole that is currently pending in the Circuit Court of Greene County, Missouri ("State Case").

On March 1, 2017, the Court preliminarily enjoined Defendants "from taking any adverse legal action against Plaintiff stemming from her criticism of Cole's official conduct" until O'Toole's federal case is resolved on the merits. (Doc. # 39 at 4).

In the instant motion, O'Toole seeks summary judgment on the basis that there is no genuine issue of material fact and she is entitled to judgment as a matter of law on her claim for retaliation under the First Amendment that is predicated on Cole's State Case against her and O'Toole's removal from a meeting of the City's Board of Aldermen ("City Meeting").

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party bears the burden to establish both the lack of any genuine issue of material fact and an entitlement to judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. In applying this burden, the Court affords to the non-moving party the benefit of all reasonable factual inferences. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991)).

## UNCONTROVERTED FACTS

O'Toole is a citizen of the City who advocates for the humane treatment of animals. Cole is mayor for the City and is a public official who is ultimately responsible for all municipal issues. Cole also is the sole proprietor, owner, and operator of a barber shop in the City.

In 2014, O'Toole saw and left food for a particular stray dog in the City. Sometime in 2014, O'Toole noticed, based on her experience, that the dog was pregnant, or had recently given birth.

In the fall of 2014, Cole, while acting in his official capacity as mayor, shot and killed the dog. O'Toole learned about the shooting from local business owner J.R. Mahurin, who indicated he heard a gunshot, went outside, and saw Cole holding a shotgun and standing about 30 feet away from the dog which was still living. Mahurin said he then saw Cole retrieve a pistol and shoot the dog with the pistol from about 8 feet away, and put the dog's body in the bed of Cole's truck.

O'Toole was upset of Cole's shooting the dog. In October 2014, O'Toole and her brother attended a City Meeting. The two were removed from the City Meeting by law enforcement, at Cole's official direction. O'Toole and her brother are the only individuals that Cole has ever had removed from such a meeting.

After the removal from the City Meeting, O'Toole criticized Cole's conduct in shooting the dog in the following ways: (a) posting criticism on Facebook; (b) attempting to speak at another City meeting; (c) requesting an investigation through the Humane Society of Missouri; (d) circulating an online petition calling for Cole's resignation as mayor and for the

City to implement a written animal-welfare policy; (e) accepting an interview with local media outlet KSPR; and (f) requesting and attending a meeting at Cole's office with Cole, City police chief Bill Pomeroy, and City Attorney Kenneth Reynolds.

After O'Toole engaged in the acts listed above, Cole filed the State Case against her in April 2015. Cole paid the filing fee for the State Case from his personal bank account. The City is aware of the State Case but did not vote on whether the State Case should be filed or authorize Cole to file it. Generally, the filing of a lawsuit relating to City business is something the City council would discuss and vote on. Additionally, at least two council members for the City were not aware of the State Case until after it was filed.

Reynolds, who performs work for the City and maintains a private law practice, is Cole's counsel in the State Case. Reynolds' work as City attorney makes up about 2% of his business. Reynolds does not receive a salary from the City; rather, Reynolds bills the City by the hour for work performed. Reynolds has not billed the City for work performed on the State Case.

Cole and Reynolds have an oral fee arrangement, but the details of the arrangement have not been disclosed beyond Cole's statement in October 2016 that he will compensate Reynolds personally in connection with the State Case. Reynolds deposed O'Toole for two-and-a-half hours in connection with the State Case. During the deposition, Reynolds said the following: (a) "[w]e can go through this all day long, and we'll come back and do it more. You're going to have to answer the questions,"; and (b) "[i]f you don't answer the question, I'm going to certify it, and if the judge says you have to answer it, you're going to pay for that part of the deposition and we're going to come back and do it again ...." Reynolds also asked O'Toole

about unrelated tickets that she had received from the City. Cole paid the costs of O'Toole's deposition from his personal bank account.

The State Case petition was notarized by the City's clerk, Cari Gillmore. The City paid for Gillmore to become a notary public, maintain a seal, and carry insurance. Gillmore notarized Cole's discovery responses in the State Case. Gillmore did not charge Cole for her notary services, and the notarization of the State Court petition and discovery responses occurred at City hall. Cole did not tell Gillmore that the documents she notarized in connection with the State Case were official City business.

In 2016, Gillmore's employment with the City was terminated after allegations of misappropriation of funds. The City filed suit against Gillmore in the Circuit Court of Greene County, Missouri, for fraud, conversion, and breach of fiduciary duty. Gillmore filed suit against the City, claiming she is due back pay and vacation pay. These two lawsuits are pending.

O'Toole unsuccessfully ran for election as mayor of the City against Cole in 2016.

## DISCUSSION

O'Toole argues she is entitled to summary judgment because there is no genuine issue of material fact that Defendants retaliated against her, in violation of her rights under the First Amendment, under color of law, as required under 42 U.S.C. § 1983.

■ Before assessing the facts relative to O'Toole's claim of First Amendment retaliation, the Court must first find it cognizable under § 1983. O'Toole's constitutional claim is cognizable only if the allegedly retaliatory acts were taken under color of state law, Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct.

1061, 117 L.Ed.2d 261 (1992) (citing 24 U.S.C. § 1983). The retaliatory acts at issue are (1) Cole's filing of the State Case; and (2) O'Toole's removal from the City Meeting at Cole's direction.

To establish liability against Cole in his personal capacity under § 1983, O'Toole must show that Cole retaliated against her under color of law in filing the State Case against her, and in directing her removal from the City Meeting. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). To establish liability against the City under § 1983, O'Toole must show that the City is "a moving force" behind the State Case and O'Toole's removal from the City Meeting. Id. at 167, 105 S.Ct. 3099 (citations omitted). Stated differently, in order for Cole's conduct, which was allegedly retaliatory in nature, to be attributable to the City, O'Toole must establish that that the City's "policy or custom must have played a part in the violation of federal law." Id. (citations omitted).

■ With respect to Cole's filing of the State Case, O'Toole's retaliation claim is cognizable under § 1983 only if Cole, in filing the State Case, "abuse[d] the position given to him by the State." Ramirez–Peyro v. Holder, 574 F.3d 893, 900 (8th Cir. 2009). "[T]o find whether an official acts under color of law, [courts] look to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct. Absent any actual or purported relationship between the [official's] conduct and his duties ... the [official] cannot be acting under color of state law." Id. at 900–01.

■ The existence of a sufficient nexus between the official's public position and his alleged harmful conduct is "necessarily [a] fact intensive" inquiry. Id. at 901. To determine whether a sufficient nexus exists, the following factors are relevant: (1) the actor's motivation; (2) whether the actor's position provided access to the victim; (3) whether the actor was in the uniform of the official position; and (4) whether the actor threatens future official action. Magee v. Trs. of Hamline Univ., Minn., 747 F.3d 532, 535–36 (8th Cir. 2014).

■ Based on the uncontroverted facts, particularly in light of the applicable fact-intensive standard, O'Toole has not established that Cole filed the State Case under color of law. Genuine issues of material fact remain regarding whether a sufficient nexus exists between Cole's filing the State Case and his position as mayor. Therefore, based on the current record, there remain genuine issues of material fact and O'Toole is not entitled to judgment as a matter of law that § 1983 liability arises in connection with the State Case.

With respect to O'Toole's removal from the City Meeting, the uncontroverted facts do not establish as a matter of law that the City's policy or custom was the impetus behind the removal. Id. (citations omitted).

Notwithstanding, the Court assumes for discussion's sake that O'Toole's retaliation claim provides a basis for recovery under § 1983 and considers the merits of O'Toole's summary judgment motion relative to the elements of her First Amendment retaliation claim.

■ "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... on the basis of his constitutionally protected speech." Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007).

■ A prima facie case of First Amendment retaliation requires a plaintiff to prove the following: "(1) he engaged in a protected activity, (2) the government officials took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the

adverse action was motivated at least in part by the exercise of the protected activity." Bennie v. Munn, 822 F.3d 392, 397 (8th Cir. 2016) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).

The Court first considers whether there is a genuine issue of material fact and O'Toole is entitled to judgment as a matter of law on the element of protected activity. Under the uncontroverted facts, Cole is a public official with ultimate responsibility for all City issues, who, while acting in his official capacity, shot a dog. O'Toole was upset by Cole's shooting the dog, and publicly criticized this official act through, among other acts, a Facebook post and circulation of an online petition calling for Cole's resignation and the City's adoption of a written animal-welfare policy. O'Toole's removal from the City Meeting was around the same time that Cole shot the dog, and Cole filed the State Case in April 2015, after O'Toole had engaged in public criticism of the dog shooting.

 "Criticism of public officials lies at the very core of speech protected by the First Amendment." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002); New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (referencing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."). Therefore, even false statements about public officials are protected under the First Amendment in order to avoid the risk of would-be critics censoring themselves. Sullivan, 376 U.S. at 278–79, 84 S.Ct. 710. Thus, a public official alleging a claim of defamation is required to prove that a false statement made against him "was made with actual malice—that is, with knowledge that [the statement] was false or with reckless dis-regard of whether it was false or not. Id. at 279–80, 84 S.Ct. 710. In this context, "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). In the absence of evidence that the defendant had serious doubts about the truthfulness of his statement, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Id. at 732, 88 S.Ct. 1323.

 Additionally, a defamation plaintiff attempting to establish actual malice will not meet his burden by showing "defendant's ill will, desire, to injury, or political or profit motive . . . ." Campbell v. Citizens for an Honest Gov't, Inc., 255 F.3d 560, 569 (8th Cir. 2001). Additionally, a defamation plaintiff attempting to establish actual malice must present evidence beyond a defendant's failure to investigate. Id. at 570 (citing Harte–Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 662, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)).

 In this case, the uncontroverted facts do not provide sufficient evidence to establish O'Toole's state of mind in engaging in criticism against Cole. Additionally, although Cole does not dispute that he indeed shot the dog, O'Toole did not witness the incident and the record does not provide adequate information relative to the credibility of O'Toole's sources. Although the Court notes "whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law," the current record does not provide an adequate basis for the conclusion that O'Toole is entitled

to judgment. <u>Harte–Hanks</u>, 491 U.S. at 685, 109 S.Ct. 2678. Consequently, the Court cannot conclude that O'Toole published truths, or that she did not publish falsities with reckless disregard for the truth, thus precluding the finding that O'Toole engaged in a protected activity to sustain her First Amendment retaliation claim. Because O'Toole is not entitled to summary judgment on the protected activity element, the Court declines to consider the remaining elements. Accordingly, it is hereby

ORDERED Plaintiff's Motion for Partial Summary Judgment (Doc. # 42) is DENIED.

IT IS SO ORDERED.